[987 NYS2d 387]

In the Matter of MARK R. COLODNE (Admitted as MARK RALPH COLODNE), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 17, 2014

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Kevin P. Culley* of counsel), for petitioner.

*Mark R. Colodne,* respondent pro se, no appearance.

## OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in the State of New York by the First Judicial Department on July 7, 1981 as Mark Ralph Colodne. At all times relevant to this proceeding, respondent maintained a registered office in Florida, where he resides.

In December 2011, the Departmental Disciplinary Committee brought five disciplinary charges against respondent alleging that he violated the Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) (conduct involving dishonesty, fraud, deceit or misrepresentation) (three counts); DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]) (conduct prejudicial to the administration of justice); and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) (conduct adversely reflecting on fitness as a lawyer). The charges arose from respondent's solicitation of an investor in a high-risk hedge fund which he formed and managed. The Committee alleged that respondent failed to advise the investor that the fund engaged in trading activities not authorized by its controlling documents, falsely represented that the fund had retained the services of an independent accountant, falsely represented to the investor that her funds were lost as a result of the fund's unsuccessful investment in computer chips, and failed to provide the Committee with documents requested during the investigation. In his answer, respondent denied that he violated DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) and did not address the other charges.

Respondent does not practice law, but operates a tax preparation and consulting business in Florida. Buono, a retired government employee, and her husband sought financial advice from

respondent, whom they had used as a tax preparer and financial adviser for the previous five years. Respondent advised Buono to invest in a hedge fund he had formed and managed, Green Oak Hedge Fund, Ltd. (Green Oak), assuring her that it was conservative and safe, and employed a trading strategy that was guaranteed not to lose money. However, according to Green Oak's offering materials and its limited liability partnership agreement, which were never provided to Buono, the fund utilized an options trading strategy and involved a high degree of risk, including the possibility that investors could lose part or all of their investment.

In March 2005, Buono invested $26,874.92 in Green Oak, which constituted most, if not all, of her savings. At that time, respondent did not have Buono sign a limited partnership agreement or subscription agreement, which were required to become an investor in Green Oak. Rather, Buono's funds were deposited into an E*Trade account that respondent created on her behalf. When Buono received a financial statement indicating that her funds were sitting inactive in the E*Trade account, she pressed respondent for an explanation. In February 2006, respondent met with Buono and had her sign the signature pages for an amended and restated limited partnership agreement and a subscription agreement, but did not provide her with the agreements themselves.

Respondent also failed to advise Buono that, in November 2005, Green Oak had lost nearly all of its assets (more than $800,000) in a failed transaction involving the purchase and sale of computer chips. The transaction at issue involved three business entities which were the alter egos of Rick Hopkinson, who defrauded respondent and Green Oak, and absconded with the invested funds. Respondent asserted that the transaction with Hopkinson was authorized by the Green Oak's governing documents, however, he conceded at the hearing that it was outside of Green Oak's stated trading strategy. He also conceded that he could have advised Buono about the loss before he transferred her funds from the E*Trade account to Green Oak's account in March 2006, but he chose not to do so.

Respondent promised Buono that she would receive monthly statements, but she only received one. When Buono confronted respondent about this, he told her that the statements prepared by the fund's accountant could not be sent because they contained inaccuracies and promised quarterly statements in the future. Buono did not receive any quarterly statements. In

August 2007, her daughter contacted the accountant listed on Green Oak's website. That individual informed her that he was never Green Oak's accountant and that he had received similar complaints from other investors regarding respondent and Green Oak.

During an August 2007 meeting, respondent disclosed to Buono and her husband that Green Oak had no money, that it had been defrauded in the computer chip venture, and that Buono's funds were being used to pursue litigation against Hopkinson and others. Notably, Buono's funds were not actually invested with Green Oak until March 2006, which was after the fund had incurred the substantial losses related to the computer chip venture. During his deposition before the Committee, respondent initially testified that Buono's funds were invested in Green Oak prior to the computer chip transaction, however, he changed his testimony once he was shown the relevant bank records. At the August 2007 meeting, respondent gave Buono a written contract promising to repay the amount of her initial investment, which he never did. On November 2007, Buono filed a complaint with the Committee.

In addition to his misrepresentations to Buono, between 2006 and 2007, after Buono's investment, respondent withdrew from the fund more than $20,000 for himself and other entities he controlled. He also disbursed $126,000 to entities owned and controlled by a Leonard Conticello, a purported stock analyst employed by Green Oak who did not hold any investor advisory or broker's licenses and no prior training or experience in investing.

Respondent conceded that he made numerous distributions to Green Oak investors in disregard of governing documents, which only permitted quarterly distributions and upon receipt of written request by the investor. Specifically, respondent permitted certain investors to withdraw their funds, at any time, without calculating principal and interest, or apportioning losses that accrued, while other investors, like Buono, were kept unaware of the fund's insolvent condition. Respondent also repeatedly failed to provide the Committee with the specified documentation it requested related to Green Oak.

For two days in August and October 2012, respondent appeared pro se at the hearing before the Referee. At the conclusion of the Committee's case and directly after he finished testifying, he withdrew his answer and admitted to all the charges. Accordingly, upon application of the Committee, in a

report dated January 8, 2013, the Referee sustained all of the charges. Respondent waived a sanction hearing and agreed that evidence in aggravation and mitigation would be presented in the form of documentary and written submissions.

As part of its case in aggravation, the Committee cited to the fact that three former investors of Green Oak had obtained judgments against respondent in two Florida lawsuits, for $246,000 and $100,000. The actions at issue were predicated upon claims of breach of contract and fraud in the inducement. Respondent has not satisfied either judgment, in whole or in part. The Committee also presented evidence that, in an unrelated matter, respondent may have used forged documents to withdraw funds from a deceased person's E*Trade account without permission or authority to do so, and used said funds for his own personal purposes. The account at issue concerned a tax client of respondent's who died in July 2003. Between December 2003 and July 2004, documents purportedly containing the client's signature were used to open a joint E*Trade account in his name and that of respondent, and, thereafter, approximately $126,000 was transferred from the client's individual E*Trade account to the joint account. Account statements showed that respondent traded on the account for approximately 18 months. At the request of the deceased client's executor, E*Trade commenced an investigation, which ultimately resulted in E*Trade returning the transferred funds to the individual account and closing the joint account.

Respondent was examined on this issue during his deposition in one of the Florida lawsuits. He professed some confusion as to the dating of the documents at issue, but acknowledged that he authorized the transfer of funds from the individual account to the joint account. However, he claimed the transfer occurred prior to his client's death when he purportedly held a power of attorney.

The Referee gave respondent until December 28, 2012 to make any submission in mitigation of the charges or to refute the evidence in aggravation, but he failed to make any submission. The Committee submitted a post-hearing memorandum in which it argued that respondent should be disbarred. Despite the opportunity to do so, respondent did not submit a post-hearing memorandum.

The Referee recommended that respondent be suspended from the practice of law for three years and be required to make full restitution to Buono. The Referee found respondent's fail-

ure to disclose to Buono the risks inherent in investing in Green Oak and that it had sustained substantial losses in the computer chip investment, which was outside the scope of its stated investment activity, was "serious and material." Furthermore, respondent solicited Buono's investment even though he knew that she did not qualify as a "suitable investor" and could not afford to lose her investment. The Referee noted that respondent misled Buono that Green Oak pursued a conservative investment strategy and made misrepresentations to her regarding the reason she had not received promised periodic statements. The Referee also found that respondent concealed the fund's precarious financial condition from Buono all the while paying substantial fees to himself and his business associates, in addition to indiscriminate disbursements to other investors without apportioning losses.

The Referee determined that respondent's misconduct was aggravated by the fact that he falsely testified at his deposition that Buono's funds were invested with Green Oak prior to the failed computer chip transaction and that he did not advise Buono of the failed, improper computer chip transaction in 2006 when he transferred her funds to Green Oak. The Referee found respondent's misconduct was further aggravated by similar conduct in connection with the Florida lawsuits that resulted in judgments entered against him and his actions in the deceased tax client matter. While respondent did not present a case in mitigation, the Referee, nonetheless, noted some mitigating factors, including respondent's lack of a prior disciplinary history in his 30 years as an admitted attorney.

On April 2, 2013, a Hearing Panel heard oral arguments. Respondent did not appear at the oral argument despite notification by the Committee via two voice-mails and a letter sent certified mail, return receipt requested which was signed for by respondent. Before the Panel, the Committee argued for confirmation of the Referee's liability findings, but modification of his sanction, urging disbarment.

In its report dated April 29, 2013, the Hearing Panel unanimously affirmed the Referee's liability findings, but agreed with the Committee that respondent should be disbarred. The Panel also recommended that respondent be ordered to make full restitution to Buono, including accrued interest.

The Panel found that disbarment was warranted by: (1) respondent's admission of all the charges; (2) the fact he engaged in similar misconduct with respect to other investors

and failed to satisfy two of their judgments entered against him; (3) his disregard of his obligation to cooperate with the Committee's investigation; (4) the evidence that he submitted forged documents in connection with the deceased client's matter; and (5) his failure to appear at the oral argument before the Panel without offering any explanation for his absence.

The Departmental Disciplinary Committee seeks an order, pursuant to Rules of the Appellate Division, First Department (22 NYCRR) §§ 603.4 (d) and 605.15 (e) (2) and Judiciary Law § 90 (2) confirming the Hearing Panel's findings of fact and conclusions of law and its sanction recommendation of disbarment. Respondent was served with the Committee's petition at his registered address in Florida by first-class mail and certified mail, return receipt requested, but has not submitted a response.

The Hearing Panel's liability findings are amply supported by respondent's admission of all charges, as well as the witness testimony and documentary evidence presented at the hearing. Respondent's misconduct is sufficiently egregious to warrant disbarment.

Although respondent has no prior disciplinary history, his misconduct was intentional and involved repeated, material misrepresentations to Buono and she lost most of her savings. There also is significant evidence of aggravation, namely that respondent testified falsely at his deposition before the Committee, that he engaged in similar misconduct with respect to other Florida investors and has not satisfied the two judgments they obtained against him, and he improperly transferred the funds of a deceased tax client into a joint brokerage account.

As to the Hearing Panel's additional recommendation that respondent's reinstatement be conditioned upon his making full restitution to Buono with interest, this Court cannot issue an order directing restitution pursuant to Judiciary Law § 90 (6-a) (a). Respondent's fraudulent solicitation of investment funds from Buono occurred in his role as a financial adviser, not in connection with the practice of law as contemplated by the statute.

Accordingly, the petition is granted, the Hearing Panel's report and recommendation of disbarment is confirmed, and respondent's name is stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.

SWEENY, J.P., RENWICK, SAXE, FREEDMAN and RICHTER, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.